Peter **BROEKELSCHEN,**
**M.D., Petitioner,**

v.

**SECRETARY OF HEALTH AND
HUMAN SERVICES,**
Respondent.

**No. 07–137 V.**

United States Court of Federal Claims.

Oct. 31, 2011.

Cl. at 370.

Lisa A. Roquemore, Irvine, California, for petitioner.

Voris E. Johnson, Jr., Trial Attorney, Catharine E. Reeves, Assistant Director, Vincent J. Matanoski, Acting Deputy Director, Mark W. Rogers, Acting Director, Torts Branch, Civil Division, Tony West, Assistant Attorney General, United States Department of Justice, Washington, D.C., for respondent.

## OPINION AND ORDER[1]

GEORGE W. MILLER, Judge.

On February 21, 2011, petitioner Dr. Peter Broekelschen filed a final application for attorney's fees and costs (docket entry 85) after his petition for relief under the Vaccine Act was denied. Special Master Christian Moran awarded petitioner a reduced amount of his requested fees and costs. Petitioner now files a motion for review arguing that the special master acted arbitrarily, capriciously, and contrary to law, and abused his discretion when he awarded petitioner fees and costs less than that requested. For the reasons set forth below, the Court **DENIES** petitioner's motion for review and **AFFIRMS** the decision of the special master.

## I. Background

### A. Procedural History

Petitioner filed a petition for compensation under the Vaccine Act on March 1, 2007, claiming that he suffered transverse myelitis as a result of the influenza vaccination (docket entry 1). On February 4, 2009, the special master issued a decision holding that petitioner was not entitled to compensation (docket entry 67) because the special master did not find that there was a causal connection between petitioner's determined ailment and the vaccination he received. Decision Denying Entitlement 28.

Before the special master issued his decision, petitioner filed an application for interim fees and costs (June 27, 2008, docket entry 40). On December 17, 2008, two months before he rendered his decision on the merits of the vaccine petition, the special master awarded petitioner a portion of his requested fees and costs. See Decision on Att'y's Fees & Costs ("Interim Fees Dec.") (docket entry 65). Specifically, the special master awarded petitioner $107,035.75 in attorney's fees out of $123,337.75 requested, and $5,801.26 in attorney's costs out of $6,051.26 requested. Id. at 9, 11–12; see infra table 1. The reduction in costs was made to reflect a refund of a $250.00 refiling fee that petitioner's counsel had already received. Interim Fees Dec. 12. When awarding attorney's fees, the special master found that petitioner's counsel's hourly rate was reasonable, but determined that the number of hours she spent on various tasks, some of which could have been performed by a paralegal, was excessive. Id. at 5–11. Accordingly, he reduced the hours she spent on certain activities related to the litigation and recalculated her fees. Id.

Additionally, the special master awarded $1,559.00 in expert costs, the full amount

1. Pursuant to Rule 18(b), Appendix B of the Rules of the Court of Federal Claims, this Opinion and Order is initially being filed under seal.

By rule, the parties are afforded 14 days in which to propose redactions.

requested, and $19,975.00 in expert fees out of $22,300.00 requested. *Id.* at 12–16; *see infra* table 1. In reducing the expert fees, the special master found that one expert's 2008 rate of $500.00 per hour, a $100.00 increase from that same expert's 2007 hourly rate, was unreasonable. Interim Fees Dec. 13–15.

Accordingly, the 2008 hourly rate was reduced to $425.00 and the resultant fees were calculated accordingly. *Id.* at 15. In total, petitioner was awarded $134,371.01 in interim fees and costs. *Id.* at 16.

**Table 1:** *Interim Fee Award\**

| | Amount Requested | Amount Awarded |
| --- | --- | --- |
| **Attorney's Fees** | $123,337.75 | $107,035.75 |
| **Attorney's Costs** | $6,051.26 | $5,801.26 |
| **Expert Fees** | $22,300.00 | $19,975.00 |
| **Expert Costs** | $1,559.00 | $1,559.00 |
| **Total** | $153,248.01 | $134,371.01 |

\* Interim Fees Dec. 9–16; *see also* Decision on Att'y's Fees and Costs ("Dec. on Fees & Costs") 2–3 (docket entry 92, June 3, 2011).

On March 5, 2009, petitioner filed a motion for review of the entitlement decision alleging that the special master did not review the record as a whole and "applied a legally erroneous standard of proof for causation." Mot. for Review 2 (docket entry 68). On August 4, 2009, this Court denied petitioner's motion for review and affirmed the special master's decision (docket entry 78). Petitioner then filed an appeal to the United States Court of Appeals for the Federal Circuit (docket entry 81, Sept. 28, 2009). The Federal Circuit affirmed, finding that the "special master's determination was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Broekelschen v. Sec'y of Health & Human Servs.*, 618 F.3d 1339, 1351 (Fed.Cir.2010). Judge Gajarsa wrote the majority opinion, in which Judge Plager joined. *Id.* at 1341. Judge Mayer filed a dissent. *See id.* at 1351–54. On October 21, 2010, petitioner filed his petition for rehearing en banc, *see* Pet. for Reh'g En Banc, which the Federal Circuit denied on December 8, 2010. *Broekelschen*, 618 F.3d at 1339.

*B. The Special Master's Decision on Petitioner's Request for Attorney's Fees and Costs*

Subsequently, on February 21, 2011, petitioner filed an application for attorney's fees and costs requesting compensation for the work conducted following the award of interim fees and costs. *See* Pet'r's Final Appl. for Compensation. In his application, petitioner discussed the reasonableness of his attorney's fees and the amount and type of work that his attorney conducted at each stage of his vaccine proceeding, including the appellate phase. *See id.* Attached to this petition was a declaration of petitioner's attorney, *id.* at 9–14, as well as copies of receipts and billing statements reflecting the fees and costs associated with the litigation, including petitioner's counsel's trip to Washington, D.C., to participate in oral argument before the Federal Circuit. *See id.* Exs. A–D.

1. *Fees*

On June 3, 2011, the special master issued his decision on petitioner's application for fees and costs in which he granted petitioner's request in part. *See* Dec. on Fees & Costs. The decision awarded petitioner $124,711.51 in fees and costs ($115,518.00 in fees and $9,198.51 in costs), a reduction from the $165,716.58 that he originally sought. *Id.* at 21.

In deciding to reduce the amount of attorney's fees awarded, the special master first determined that petitioner was entitled to attorney's fees. *Id.* at 3–4. He cited the Vaccine Act, which states that attorney's fees may be awarded to a petitioner who does not receive compensation if the special master "determines that the petition was brought in

good faith and there was a reasonable basis for the claim." *Id.* at 4 (quoting 42 U.S.C. § 300aa–15(e)) (internal quotation marks omitted). Because respondent did not argue petitioner's qualification for an award and conceded that "there was at least some reasonable basis for petitioner's appeals," the special master found that petitioner qualified for an award of fees and costs under the Vaccine Act. *Id.* (citing Resp't's Opp'n to Pet'r's Final Appl. for Att'y's Fees & Costs 4 n. 2 (docket entry 87, Mar. 8, 2011) ("Resp't's Opp'n")) (internal quotation marks omitted).

Next, the decision addressed whether the amount of attorney's fees requested was reasonable. The special master employed the lodestar method, *see id.* at 4, in which "a court first determines an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Avera v. Sec'y of Health & Human Servs.,* 515 F.3d 1343, 1347–48 (Fed.Cir.2008) (quoting *Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). As the initial step in conducting this analysis, the special master accepted as reasonable petitioner's attorney's hourly rate of $340.00, noting counsel's skill and experience, as well as the generally expensive nature of the area in which she practices and the fact that neither petitioner nor respondent requested that forum rates be used. Dec. on Fees & Costs 5 & n. 2. He also established a reasonable hourly rate for a paralegal of $125.00. *Id.* at 5.

After he determined that counsel for petitioner's hourly rate was reasonable, the special master addressed the second part of the lodestar method, namely the reasonable number of hours expended. *See id.* at 5–19. In his request for fees and costs, petitioner requested compensation for "approximately 300 hours at an attorneys' rate and nearly 200 hours at a paralegal rate." *Id.* at 6. Respondent challenged the number of hours expended as unreasonable. *Id.*

In weighing the arguments, the special master considered three factors: (1) the high hourly rate of petitioner's attorney resulting from her locale and the corresponding expectation that she work efficiently; (2) the fact

that most of the fees requested were generated by work conducted during the appellate phase of the vaccine litigation and that a reduction of fees may be perceived as a penalty for pursuing an appeal; and (3) "the specificity in the attorney['s] timesheets and in the respondent's objections." *Id.* at 6–7.

#### a. Determination of Reasonable Fees for Each Phase of Litigation

In its full assessment of the fees and costs, the special master's decision divided the fee request into five periods of the litigation: (1) "activities performed before the special master until the entitlement decision was issued"; (2) "activities relating to the motion for review by the Court of Federal Claims"; (3) "activities before the panel of the Federal Circuit"; (4) "activities before the entire Federal Circuit on a request for a rehearing en banc"; and (5) "activities before the special master in resolving the fee dispute." *Id.* at 9.

For the first period, petitioner requested $13,035.00 in attorney's fees and $9,693.00 in fees associated with his request for interim fees, for a total of $22,728.00. *Id.; see infra* table 2. The first amount represented 35 hours of attorney work and 8 hours of paralegal work. Dec. on Fees & Costs 9. This time was expended drafting a reply brief in response to an order from the special master seeking the opinion of a third-party neuroradiologist. *Id.* The special master determined that the time devoted to researching and writing the reply brief was reasonable, and therefore he awarded petitioner the full $13,035.00. *Id.; see infra* table 2.

The $9,693.00 request related to work associated with the interim award of fees and costs. Dec. on Fees & Costs 9. Petitioner had already received some compensation for the work performed regarding his request for interim fees. *Id.* at 9–10. The special master noted that this request for fees was the first for petitioner's counsel in her time before the Vaccine Court and that this was the first time a special master awarded interim fees. *Id.* at 10. These two circumstances partially justified the amount of time expended in preparing the petition for interim fees. *Id.*

Respondent argued that some of the tasks performed by petitioner's attorney could have been performed by a paralegal at a lower hourly billing rate. *Id.;* Resp't's Opp'n 9. In response, petitioner allocated some of the hours his attorney spent to a paralegal, thus decreasing the overall amount of fees requested. Dec. on Fees & Costs 10. This new amount of fees was deemed reasonable in light of the circumstances and, therefore, the special master awarded petitioner the full $9,693.00. *Id.* at 11; *see infra* table 2.

For the second period of litigation—work before the Court of Federal Claims—petitioner requested $31,035.00, an amount representing 75 hours of attorney time and 43 hours of paralegal time. *Id.; see infra* table 2. This amount was voluntarily reduced by petitioner from $40,770.00, which represented 118.2 hours of attorney time and no paralegal time. Dec. on Fees & Costs 11 n. 6. Despite this reduction, the special master found the time expended, and thus the amount requested, unreasonable. *Id.* at 12. His decision noted that, of the time recorded for this phase of litigation, approximately 100 hours were devoted to developing petitioner's motion for review. *Id.* at 11. In his discussion, the special master observed that the 50–page motion was not entirely "fresh work," that much of it was very similar to petitioner's June 26, 2008 brief regarding his entitlement petition, and that petitioner's attorney was "not entitled to compensation for copying and pasting words from one brief to another brief." *Id.* at 11–12. The decision then explained that only 20 pages of the motion constituted new work, a number the special master thought small considering the approximately 100 hours petitioner's attorney spent working on it. *Id.* at 12. Accordingly, the special master reduced petitioner's request for work done in this period to an amount he deemed "reasonable," namely $15,600.00, which represented 40 hours of attorney time and 15 hours of paralegal time. *Id.; see infra* table 2.

For the third period of litigation—work before the Federal Circuit, specifically before the three judge panel—petitioner requested $101,500.00 for 317 hours of work. Dec. on Fees & Costs 12–13. Petitioner later reduced his request to $83,040.00, representing 200 hours of attorney time and 117 hours of paralegal time. *Id.* at 13; *see infra* table 2. The special master found this reduced request unreasonable. Dec. on Fees & Costs 13. He explained that "[t]he amount of hours spent exceeds what reasonable attorneys who hold themselves out as highly qualified attorneys in the Vaccine Program would spend," specifically pointing to the 30 hours petitioner's attorney spent "[f]iguring out appeal procedure, [and] ordering [a] transcript." *Id.* He also deemed unreasonable the 140 hours petitioner's counsel spent preparing the initial brief, noting that only 17 pages of the 58–page brief constituted new work. *Id.* at 13–14. Additionally, he criticized the amount of time petitioner's attorney spent reviewing the file in preparation for oral argument, focusing, in particular, on the series of entries dedicated to this task over the course of about one month and finding that "[t]he number of hours devoted to file review seem[ed] to ignore the previous work." *Id.* at 14 (citing *Greenhill v. United States,* 96 Fed.Cl. 771, 780 (2011)). Given this analysis, the special master found that 143 hours of attorney time and 59 hours of paralegal time were reasonable for oral argument preparation. *Id.* Accordingly, petitioner was awarded $56,415.00. *Id.; see infra* table 2.

The fourth period of litigation included work conducted before the Federal Circuit when petitioner requested a rehearing of the panel's decision en banc. Dec. on Fees & Costs 14. For this work, petitioner originally requested $23,965.00 for 69 hours of attorney time and 2 hours of paralegal time, an amount that petitioner later reduced to $18,525.00 for 45 hours of attorney time and 25 hours of paralegal time. *Id.; see infra* table 2. Again, the special master found this request unreasonable. Dec. on Fees & Costs 15. He reasoned that many of the hours were spent performing work that was repetitious of work done for other briefs, specifically noting that the case upon which petitioner relied had been used by petitioner in prior stages of the litigation. *Id.* Accordingly, the special master reduced petitioner's award to $13,275.00, an amount reflecting 35 hours of

attorney time and 10 hours of paralegal time. *Id.; see infra* table 2.

For the final period of litigation—work before the special master regarding a final award of fees, or "fees for fees"—petitioner requested a total of $10,388.58. Dec. on Fees & Costs 15. First, petitioner requested $5,399.00 for 15 hours of attorney work and 2.8 hours of paralegal work. *Id.* Petitioner then reduced this to $4,386.00 for 10 hours of attorney work and 7.8 hours of paralegal work. *Id.* This was later increased to the final request after petitioner calculated the fees for his reply and sur-reply briefs, together totaling an additional $6,002.58 ($5,209.08 for the reply and $793.50 for the sur-reply). *Id.; see infra* table 2.

Petitioner argues that his request is reasonable because his attorney previously received an interim award for 20 hours of work in this litigation. Dec. on Fees & Costs 15 (citing Pet'r's Supplemental Decl. in Supp. of Pet'r's Reply to Resp't's Opp'n to Final Appl. for Compensation 14 ("Pet'r's Suppl. Decl.") (docket entry 88, Mar. 11, 2011)). The special master explained that, although 20 hours was requested, petitioner's counsel was compensated for only 16 hours of work, a reduction of 20 percent. *Id.* (citing Interim Fee Dec. 11). He also observed that the additional time included in the award for interim fees took into consideration the fact that this was the first time petitioner's counsel's hourly rate was being reviewed in the Vaccine Program. *Id.* at 16. The newness of this analysis warranted additional time. *Id.* However, once an attorney's rate is established in the Vaccine Program, it need not be relitigated. *Id.* Therefore, the special master noted in his decision that the only issue with regard to the final application for fees was the number of reasonable hours to be included in the calculation of fees. *Id.* With regard to this issue, the special master observed that petitioner's attorney reviewed her contemporaneous invoices, an acceptable, if not required, activity. *Id.* However, petitioner's attorney "reviewed invoices for much longer than reasonable." *Id.*

In addition to reviewing invoices related to the litigation, petitioner's counsel also prepared a 14–page memorandum to support her request for fees. *Id.* The special master stated that "[t]ypically, fee applications are not supported by such a lengthy memorandum," but that, because petitioner's counsel was somewhat unfamiliar with the process in the Vaccine Program, the time she spent drafting the memorandum was reasonable. After his analysis was conducted, the special master determined that a reasonable amount of work for this phase of litigation would be 19 hours of attorney time and 7.8 hours of paralegal time, resulting in $7,491.00, which the special master increased to $7,500.00. *Id.* at 17; *see infra* table 2.

**Table 2: *Final Fees Award****

| Period of Litigation | Amount Requested[†] | | Amount Awarded | |
|---|---|---|---|---|
| | **Hours** | **Fees** | **Hours** | **Fees** |
| Activities Before the Special Master Until the Entitlement Decision Was Issued | Attorney: 35.0 Paralegal: 8.0 | $22,728.00 [‡] | Attorney: 35.0 Paralegal: 8.0 | $22,728.00 [‡] |
| Activities Relating to the Motion for Review by the Court of Federal Claims | Attorney: 75.0 Paralegal: 43.0 | $31,035.00 | Attorney: 40.0 Paralegal: 15.0 | $15,600.00 |
| Activities Before the Panel of the Federal Circuit | Attorney: 200.0 Paralegal: 117.0 | $83,040.00 | Attorney: 143.0 Paralegal: 59.0 | $56,415.00 |
| Activities Before the Entire Federal Circuit on a Request for Rehearing En Banc | Attorney: 45.0 Paralegal: 25.0 | $18,525.00 | Attorney: 35.0 Paralegal: 10.0 | $13,275.00 |
| Activities Before the Special Master in Resolving the Fee Dispute | Attorney: 26.6 * * Paralegal: 10.1 | $10,388.58 | Attorney: 19.0 Paralegal: 7.8 | $7,500.00 |

| Total | Attorney: 381.6 | $165,716.58 | Attorney: 272.0 | $115,518.00 |
|-------|-----------------|-------------|-----------------|-------------|
|       | Paralegal: 203.1 |             | Paralegal: 99.8 |             |

\* Dec. on Fees & Costs 9–19, 21.

† The hours and fees in the table represent petitioner's final request.

‡ This represents $13,035.00 in attorney's fees and $9,693.00 in fees associated with the interim fees petition.

\* \* After petitioner submitted his final request, he further amended his application to account for work conducted on his reply and sur-reply briefs, totaling $5,209.50 [2] for the reply brief and $793.50 for the sur-reply. *See* Am. Final Appl. for Compensation 3 (docket entry 90, Apr. 7, 2011); Pet'r's Resp. to Resp't's Sur–Reply to Pet'r's Final Appl. for Att'y's Fees & Costs 4 (docket entry 91, Apr. 7, 2011). The fee for the sur-reply brief represented 2.3 attorney hours. *See* Pet'r's Resp. to Resp't's Sur–Reply to Pet'r's Final Appl. for Att'y's Fees & Costs 4. For his reply brief, petitioner requested fees for 16.6 hours of time without designating which hours were being submitted for attorney work and which were being submitted for paralegal work. *See* Pet'r's Suppl. Decl. Ex. H. According to the Court's calculations, the fee request for petitioner's reply represented 14.3 hours of attorney work at an hourly rate of $345.00 and 2.3 hours of paralegal work at an hourly rate of $120.00. Therefore, petitioner requested a total of 10.1 hours for paralegal time (7.8 hours originally requested plus 2.3 hours for the sur-reply) and 26.6 hours of attorney time (14.3 hours for the sur-reply brief plus 2.3 hours for the reply brief plus 10 hours initially submitted for this period).

### b. Considerations Supporting the Reduction of Requested Fees

In order to assure the accuracy, adequacy, and reasonableness of the award, the special master compared "the result reached in this case with results in cases involving either [petitioner's attorney] or a lengthy procedural history." Dec. on Fees & Costs 17. He first noted 5 cases involving an appeal to the Federal Circuit that the respondent cited in her opposition to petitioner's application for fees. *See id.* at 17 & n. 9. He observed that the range of awards represented by these somewhat similar cases, granted at various points from 2005 through 2007, was $127,443.58 to $238,768.05. *Id.* at 18. The $124,711.51 award in petitioner's current application for fees (a total of $115,518.00, *see supra* table 2) and costs (a total of $9,193.51, *see infra* table 3), when combined with his interim award ($134,371.01, *see supra* table 1), yields a total award of $259,082.52, which exceeds the maximum award in this group of similar cases. *Id.* Accordingly, by comparison to other, similar cases, the special master properly found petitioner's award of fees, though reduced from the original and amended requests, to be reasonable.

The special master also looked at petitioner's attorney's involvement in two other cases, both of which were decided by the same special master. *See id.* at 18–19. In reviewing these cases, the special master observed that the other special master applauded petitioner's attorney's work ethic and aptitude, but criticized that she "spends far greater hours than her contemporaries handling her cases." *Id.* at 18 (citing *Torday v. Sec'y of Health & Human Servs.*, No. 07–372, 2011 WL 1979596, at \*3 (Fed.Cl. Apr. 7, 2011)).

In conjunction with his treatment of petitioner's counsel's other cases, the special master explained that special masters may generally resolve fee disputes, but should attempt to avoid additional litigation. *Id.* at 19. Avoidance of such is likely when one "recognizes that '[i]t does not follow the amount of time actually expended is the amount of time reasonably expended.'" *Id.* (alteration in original) (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C.Cir.1980) (en banc)). Additionally, the special master recognized that, by statute, he was only permitted to award fees that are "reasonable." *Id.* Accordingly, the special master determined that a reasonable fee was $115,518.00,

**2.** This figure first appears in petitioner's March 11, 2011 supplemental declaration in support of his reply to respondent's opposition to his final application for compensation. *See* Pet'r's Suppl. Decl. 18, Ex. H. However, in his amended final application for compensation, petitioner reduces this request by 42 cents for an unknown reason.

*See* Am. Final Appl. for Compensation 3. The special master used the reduced amount in his decision. *See* Dec. on Fees & Costs 15. Accordingly, that reduced figure, $5,209.08, is reflected in petitioner's final request for fees of $10,388.58, which appears in table 2.

the sum of the fee awards justified within each period of litigation. *Id.; see supra* table 2. This compensation for fees was awarded in addition to the interim award of fees and costs in the amount of $134,371.01. Dec. on Fees & Costs 19.

### 2. *Costs*

After determining a reasonable award for fees, the special master turned to petitioner's request for costs. *See id.* at 19–21. Petitioner requested $5,932.08 in attorney's costs and $3,879.00 in personal costs. *Id.* at 19; *see infra* table 3. Respondent did not object to the latter amount, and registered only a few objections to the former. Dec. on Fees & Costs 20. Specifically, respondent objected to costs incurred when petitioner's attorney traveled to Washington, D.C., arguing about the number of nights counsel stayed in a hotel, the cost of dinner and room service, and certain Federal Express and copying expenses. Resp't's Opp'n 12. In his review, the special master determined that it was "unfair to ask a client paying for an attorneys' [sic] travel to pay for an extra day's expenses" associated with flying into Washington, D.C., two days prior to oral argument. Dec. on Fees & Costs 20. Accordingly, he deleted the expenses associated with that additional day, which totaled $425.30. *Id.* He also eliminated a $109.57 charge for a single dinner because it was "not supported." *Id.* However, the special master found reasonable the costs related to Federal Express services and photocopying that petitioner had voluntarily reduced by $56.00. *Id.* He determined that other costs requested were also reasonable. *Id.* Accordingly, he awarded petitioner attorney's costs of $5,314.51 and personal costs of $3,879.00, totaling $9,193.51. *Id.* at 21; *see infra* table 3.

### Table 3: *Final Costs Award**

|  | Amount Requested | Amount Awarded |
| --- | --- | --- |
| **Attorney's Costs** | $5,932.08 | $5,314.51 |
| **Personal Costs** | $3,879.00 | $3,879.00 |
| **Total** | $9,811.08 | $9,193.51 |

\* Dec. on Fees & Costs 19–21.

### C. *Petitioner's Motion for Review of the Special Master's Decision*

In response to the special master's decision on petitioner's application for fees and costs, petitioner filed a motion for review in this Court. See Pet'r's Mot. for Review (docket entry 93, June 16, 2011). In this motion, he alleges that the special master was "legally erroneous and, at a minimum, arbitrary and capricious" when he (1) decreased the number of hours petitioner's attorney worked on his motion for review of the special master's decision to deny entitlement, (2) decreased the number of hours petitioner's attorney worked on his appeal to the Federal Circuit, and (3) decreased the number of hours petitioner's attorney worked on his petition for rehearing en banc before the Federal Circuit. *Id.* at 1–2. He also argues that the special master "committed legal error by comparing total fees of this case to total fees in other cases where the hourly rates were significantly lower" and was arbitrary and capricious when he eliminated the costs associated with petitioner's attorney's first day of travel to Washington, D.C., for oral argument. *Id.* at 2.

## II. Analysis

### A. *Standard of Review*

Pursuant to 42 U.S.C. § 300aa–15(e)(1), if a petitioner is not awarded compensation as a result of his petition before the Office of the Special Masters, the special master "may award an amount of compensation to cover petitioner's reasonable attorneys' fees and other costs incurred in any proceeding on such petition." Once a special master makes an award of "reasonable attorneys' fees and other costs," *id.*, a petitioner may file a motion for review in the Court of Federal Claims. *Id.* § 300aa–12(e)(1).

When a petitioner files a motion for review, this Court has "jurisdiction to under-

take a review of the record of the proceedings." *Id.* § 300aa–12(e)(2). Upon completion of its review, this Court has three options for final disposition: (1) it may uphold the special master's decision and conclusions; (2) it may "set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law"; or (3) it may remand the petition to the special master. *Id.* § 300aa–12(e)(2)(A)–(C).

The special master's factual determinations are reviewed under an arbitrary and capricious standard. *See Pafford v. Sec'y of Health & Human Servs.*, 451 F.3d 1352, 1355 (Fed.Cir.2006). The Court is required to give appropriate deference in its application of this standard. *Avila ex rel. Avila v. Sec'y of Health & Human Servs.*, 90 Fed.Cl. 590, 594 (2009) (citing 42 U.S.C. § 300aa–12(e)(2)(B)); *see also Munn v. Sec'y of Health & Human Servs.*, 970 F.2d 863, 870 (Fed.Cir.1992) (noting that the court owes the "findings and conclusions by the special master great deference" and explaining that the arbitrary and capricious standard is "well understood to be the most deferential possible"). Accordingly, "[i]f the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate." *Avila*, 90 Fed.Cl. at 594 (quoting *Hines v. Sec'y of Health & Human Servs.*, 940 F.2d 1518, 1528 (Fed.Cir.1991)).

The special master's legal conclusions are reviewed *de novo* under a "not in accordance with law" standard. *Masias v. Sec'y of Health & Human Servs.*, 634 F.3d 1283, 1288 (Fed.Cir.2011); *Pafford*, 451 F.3d at 1355. This seeks to determine if the special master applied the wrong legal standard in his review. *Masias*, 634 F.3d at 1288.

Finally, discretionary rulings of the special master are analyzed using an "abuse of discretion standard." *Avila*, 90 Fed.Cl. at 594 (citing *Saunders v. Sec'y of Health & Human Servs.*, 25 F.3d 1031, 1033 (Fed.Cir. 1994)). "The special master's determination of reasonable attorneys' fees and costs in a Vaccine Act case is a discretionary ruling...." *Id.; see Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1356 (Fed.Cir. 2011) ("[T]he standard of review for the determination of reasonable attorneys' fees is abuse of discretion."). The Federal Circuit has noted that a judge or special master has abused his discretion when his "decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." *Gose v. U.S. Postal Serv.*, 451 F.3d 831, 836 (Fed.Cir.2006) (quoting *Lacavera v. Dudas*, 441 F.3d 1380, 1383 (Fed.Cir. 2006)) (internal quotation marks omitted).

Throughout his motion for review, petitioner argues that the special master was arbitrary and capricious in his fact finding and ultimate decision. *See* Pet'r's Mot. for Review. As noted, the correct standard to apply is the abuse of discretion standard. *See Avila*, 90 Fed.Cl. at 594 (citing *Saunders*, 25 F.3d at 1033). Although petitioner never mentions this standard in his motion for review, in his reply to respondent's opposition to his motion for review, petitioner acknowledges the abuse of discretion standard as the correct standard to apply. Pet'r's Reply to Resp't's Resp. to Pet'r's Mot. for Review 3 (docket entry 95–1, July 21, 2011). He then "apologize[s] for the lack of clarity" in the various headings contained in his briefs. *Id.* In light of petitioner's recognition of this standard and the fact that it is the appropriate standard with which to review a compensation award, when petitioner argues that the special master was arbitrary and capricious, the Court will interpret that as an argument that the special master abused his discretion.

B. *The Special Master Did Not Commit Legal Error or Abuse His Discretion When He Decreased the Number of Hours Devoted to Preparation of Petitioner's Motion for Review of the Decision Denying Entitlement*

1. *The Special Master Made No Legal Error*

Petitioner argues that the special master's decision to reduce the number of hours for

which petitioner sought compensation related to work on the first motion for review was contrary to law. Pet'r's Mot. for Review 11–13. Specifically, petitioner challenges the special master's assertion in his decision that "special masters are not required to be this specific," Dec. on Fees & Costs 8, when the special master did not engage in a line-by-line analysis of petitioner's application for compensation. *Id.* at 11 (citing Dec. on Fees & Costs 8). In his argument, petitioner alleges that the special master acted contrary to Federal Circuit precedent in *Saxton v. Secretary of Health & Human Services*, 3 F.3d 1517 (Fed.Cir.1993) and to Supreme Court precedent in *Perdue v. Kenny A. ex rel. Winn*, —— U.S. ——, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010). Pet'r's Mot. for Review 11.

■ Petitioner's arguments misconstrue the law and the special master's analysis. First, petitioner asserts that the special master "prefaced his Decision on the legal assumption that he need not be specific." *Id.* (citing Dec. on Fees & Costs 8). Petitioner misstates the decision and overlooks the context of the special master's statement. When he stated that "special masters are not required to be this specific," the special master was responding to petitioner's contention that respondent failed to cite with particularity its objections to petitioner's fee request. Dec. on Fees & Costs 8. After dismissing petitioner's argument that respondent did not specifically point to objectionable hours, the special master stated: "Even if there were some support for burdening respondent with producing a line-by-line analysis (and [petitioner] has not cited any authority), special masters are not required to be *this* specific." *Id.* (emphasis added). In so stating, the special master was not saying that he did not need to be specific in his analysis of petitioner's application for fees and costs, but rather that he need not delve into a "line-by-line" analysis of the billing records. This legal observation is supported by other vaccine cases. *See Hammitt v. Sec'y of Health & Human Servs.*, No. 07–170V, 2011 WL 1827221, at *3 (Fed.Cl. Apr. 7, 2011) ("In making reductions, the special master is not necessarily required to base his or her decisions on a line-by-line evaluation of the fee application." (citing *Wasson ex rel. Wasson v. Sec'y Health & Human Servs.*, 24 Cl.Ct. 482, 484 (1991), *aff'd*, 988 F.2d 131 (Fed.Cir. 1993))); *Littlejohn ex rel. Littlejohn v. Sec'y of Health & Human Servs.*, No. 3–1125V, 2010 WL 5558393, at *3 (Fed.Cl. Dec. 16, 2010) (citing *Wasson*, 24 Cl.Ct. at 484).

Second, petitioner seems to allege that the special master was not objective in his decision. *See* Pet'r's Mot. for Review 12. First, special masters are afforded considerable discretion in their determination of reasonable attorney's fees. *Avila*, 90 Fed.Cl. at 594 (citing *Saxton*, 3 F.3d at 1521). Second, special masters may use their prior experience to aid in their reasonable fee determinations. *Saxton*, 3 F.3d at 1521. Therefore, a certain level of subjectivity is permitted and warranted. Finally, there is nothing in the special master's decision regarding petitioner's fee application that suggests that his opinion was motivated by anything other than a fair, rational application of the law and his experience. Accordingly, petitioner's apparent allegation that the special master was "legally erroneous" in applying something other than objective reasoning is unsupported by law and in fact.

### 2. The Special Master Did Not Abuse His Discretion

Petitioner next takes issue with the special master's reduction of hours claimed for work involved with petitioner's first motion for review of the decision denying entitlement. *See* Pet'r's Mot. for Review 11–13. He contends that the special master's determination that a majority of the work concerning the initial motion for review was not "fresh" or new was misguided. *Id.* at 11. He points to the billing entries, noting various "activities besides 'copying and pasting.'" *Id.* Additionally, petitioner highlights another case before the Court of Federal Claims, noting that the attorney involved received compensation for 160.2 hours of work on two motions for review, averaging approximately 80 hours per motion. *Id.* at 12 (citing *Doe/11 ex rel. Doe/11 v. Sec'y of Health & Human Servs.*, 89 Fed.Cl. 661, 667 (2009)). Petitioner argues that the special master erred when he "failed to consider what another experienced

attorney expended on a Motion for Review[ ] of similar complexity." *Id.* at 13.

■ First, it is evident from his decision that the special master meticulously reviewed petitioner's original motion for review to determine a reasonable amount of time an attorney would spend drafting that document. He specifically determined which spans of pages comprised new research and writing. Dec. on Fees & Costs 12. He concluded that the remaining 30 pages were substantially similar, though not necessarily identical, to an earlier brief petitioner submitted, and therefore did not require much additional work, if any. *Id.* Moreover, the special master was within the bounds of his discretion when he reduced the number of hours based on his assessment of the final product of the hours billed. *See Rodriguez v. Sec'y of Health & Human Servs.*, 91 Fed.Cl. 453, 480 (2010) (affirming the special master's award of 25, rather than 45, hours for a post-hearing memorandum when the special master disagreed with the reasonableness of the original request "especially given the resultant product"). He therefore awarded petitioner compensation for a number of hours commensurate with 20 pages of new research and drafting. This is not unreasonable, contrary to law, or an abuse of discretion.

Second, although petitioner argues that the special master failed to consider this Court's decision in *Doe/11,* petitioner overlooks the specifics of that case as well as the fact that the special master properly addressed the compensation award in *Doe/11.* *Doe/11* was a case in which the Court of Federal Claims itself reviewed and awarded compensation for work done in connection with motions for review because the special master did not award any fees or costs related to those motions, a situation distinct from this.[3] *See generally Doe/11,* 89 Fed.Cl. 661. Additionally, the attorney's hourly rate in that case was $101.00 below petitioner's counsel's rate here. *Compare id.* at 668, *with* Dec. on Fees & Costs 5. The lower hourly rate may have contributed to the de-

termination of a reasonable compensatory award for two motions for review. Finally, in his decision, the special master considered the fees and costs ultimately awarded in *Doe/11.* Dec. on Fees & Costs 17–18, app. The total compensation provided in that case, including interim and final awards, was $178,626.84, *id.* at app., an amount significantly less than the approximately $259,000.00 that petitioner's counsel was awarded by the special master in this case. *See id.* at 21.

Accordingly, the special master properly reviewed petitioner's application for fees, properly considered relevant case law, and did not abuse his discretion when he reduced the number of hours expended by petitioner's counsel in preparing the motion for review of the special master's decision denying entitlement.

C. *The Special Master Did Not Abuse His Discretion When He Decreased the Number of Hours Billed for Work Conducted on Appeal to the Federal Circuit*

Petitioner next argues that the special master abused his discretion when he decreased the number of hours worked on his appeal to the Federal Circuit from 200 hours of attorney time and 117 hours of paralegal time—an amount petitioner voluntarily changed from 317 hours of attorney time and 0 hours of paralegal time—to 143 hours of attorney time and 59 hours of paralegal time. Pet'r's Mot. for Review 13–15. Specifically, petitioner argues that the special master overlooked the variety of issues and activities involved in the appeal, and he relies on the dissent as validation of the amount of time spent on the appellate phase of the litigation. *Id.* at 14. Again, he points to work by the attorney in *Doe/11,* alleging that he spent approximately 200 of 306 hours on an appeal before the Federal Circuit, and argues that fees and costs in this case should be commensurate with the fees and costs in *Doe/11. Id.* at 14–15.

---

**3.** The decision does not provide detail on the intricacies of those motions or the work that was required to draft them; accordingly the Court cannot say whether or not the motions constitut-

ed entirely "fresh work" and, therefore, cannot determine if the findings therein are directly applicable here.

■ The special master's decision was the result of a close review of the billing record for the work performed by petitioner's attorney in connection with the Federal Circuit appeal. Rather than simply dismissing hours as extraneous, as petitioner seems to contend, the special master discussed the specific number of pages of petitioner's brief that involved "new work" and engaged in a detailed discussion of the time petitioner's counsel spent reviewing his file in preparation for oral argument. Dec. on Fees & Costs 13–14. In light of his experience, the special master viewed the time spent on the appeal as "exceed[ing] what reasonable attorneys who hold themselves out as highly qualified attorneys in the Vaccine Program would spend." *Id.* at 13. This Court finds that this determination was properly within the special master's discretion.

Second, although comparison to other cases and other attorneys is certainly acceptable, just because one attorney was awarded compensation based upon a specific number of hours worked does not mean that the special master must make an award based upon the same number of hours.worked in an entirely different case at a higher hourly rate. The special master's review of the awards in other cases was appropriate to aid him in gauging the reasonableness of the award to petitioner's attorney. *See* Dec. on Fees & Costs 17–18, app. Additionally, the special master was within the bounds of his discretion when he reduced the award because of his assessment of petitioner's counsel's final work product for this litigation period, namely the brief petitioner's counsel prepared for the Federal Circuit's review. *See Rodriguez,* 91 Fed.Cl. at 480. Accordingly, this Court is not persuaded that the special master abused his discretion when he reduced the number of hours worked on petitioner's appeal to 143 hours of attorney time and 59 hours of paralegal time.

D. *The Special Master Did Not Abuse His Discretion When He Decreased the Number of House Billed for Work Conducted on the Petition for Rehearing En Banc*

Petitioner alleges that the special master erred when he decreased petitioner's amended request of 45 hours of attorney time and 25 hours of paralegal time (changed from his original request of 69 hours of attorney time and 2 hours of paralegal time) to 35 hours of attorney time and 10 hours of paralegal time for work done on the petition for rehearing en banc. Pet'r's Mot. for Review 15–18. Petitioner argues that this pleading did not involve "cutting and pasting" and that extensive research was conducted in writing the en banc petition. *Id.* at 16. Additionally, petitioner once again points to the compensation awarded in *Doe/11,* surmising from the facts therein that the attorney in that case was awarded fees for 50 hours of time associated with his petition for rehearing en banc. *Id.* at 17.

■ As with many of petitioner's other arguments, this argument is unpersuasive. First, in his decision the special master did not accuse petitioner's attorney of "cutting and pasting" portions of other briefs for the work done during this period of litigation. *See* Dec. on Fees & Costs 14–15. Rather, the special master noted the brevity of the petition, merely 15 pages, and that only 3 cases were cited in addition to the dissenting opinion from the Federal Circuit panel's decision. *Id.* He observed that the case upon which petitioner relied heavily was not newly decided and that petitioner had referenced it in earlier briefs. *Id.* at 15. Moreover, the special master commented that much of the time billed was spent on activities that essentially constituted repeat work. *Id.* The special master did not accuse petitioner's counsel of copying language from other briefs, but rather of engaging in work and research that had already been completed. *See id.* at 14–15. Accordingly, the special master properly reduced the number of hours for which petitioner's attorney could be compensated.

Second, as discussed, petitioner's use of *Doe/11* turns on an attempt to guess the number of hours for which petitioner's attorney in that case was compensated. There is nothing in the special master's opinion that suggests that the special master applied an incorrect legal standard, or abused his discretion when he decided to reduce petitioner's requested attorney's fees

to be commensurate with the work performed in connection with petitioner's petition for rehearing en banc.

### E. The Special Master Did Not Abuse His Discretion When He Eliminated the First Night of Travel Costs Incurred by Petitioner's Counsel in Connection with Counsel's Travel to Washington, D.C.

Petitioner contends that the special master abused his discretion when he eliminated petitioner's attorney's travel costs for the Tuesday prior to her Thursday argument before the Federal Circuit. Pet'r's Mot. for Review 19–20. Petitioner claims that, because of the time zone change and the long flight, it was required that his attorney travel to Washington, D.C., two days before the argument. *Id.* Additionally, he claims that the work conducted the day before the Federal Circuit argument, including "watching the . . . oral arguments in other Vaccine Program cases," was necessary and valuable. *Id.* at 20.

■ Here, the special master was within the scope of his discretion when he determined that it was not fair to ask a client to pay for his attorney's travel because of time zone differences. Dec. on Fees & Costs 20. He conceded that traveling to Washington, D.C., the day immediately prior to the argument was "practically required." *Id.* However, "hours that are 'excessive, redundant, or otherwise *unnecessary* ' are not 'reasonably expended.'" *Riggins v. Sec'y of Health & Human Servs.*, 406 Fed.Appx. 479, 481 (Fed. Cir.2011) (emphasis added) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). An attorney should "make a good-faith effort" to exclude these hours from his petition for compensation "just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Saxton*, 3 F.3d at 1521 (quoting *Hensley*, 461 U.S. at 433–34, 103 S.Ct. 1933) (internal quotation marks omitted). It follows that because the special master reasonably determined that it was unfair and unnecessary for petitioner's coun-

sel to travel one day earlier than required, the hours expended for that travel were unreasonable and, therefore, are not compensable. That determination is within the broad discretion of the special master.

### F. The Special Master Did Not Commit Legal Error by Comparing Total Fees in This Case to Total Fees in Other Similar Cases

In his motion for review, petitioner points to the fact that the special master compared petitioner's attorney's final fee award to awards to other attorneys in similar cases. Pet'r's Mot. for Review 18–19. He argues that this was contrary to law because the hourly billing rates for the attorneys in the other cited cases were significantly lower than the hourly rate of petitioner's counsel. *Id.* at 18. This, he argues, is "contrary to the 'lode star' [sic] method." *Id.*

■ First, as respondent points out, it is appropriate to look at fee awards in other cases to aid in determining whether the instant fee award is reasonable and within the discretion of the special master. Resp't's Mem. in Resp. to Pet'r's Mot. for Review (docket entry 94, July 18, 2011); *cf. Hall,* 640 F.3d at 1357 (looking to other similar cases to determine reasonable local and forum hourly rates for an attorney). The special master's reliance upon other fee awards to support the reasonableness of his award, *see* Dec. on Fees & Costs 17–18, app., was entirely reasonable.[4]

Second, looking to other awards for guidance is not contrary to the lodestar method. In fact, the special master properly applied the lodestar method, which involves determining a reasonable hourly rate and then multiplying that rate by the number of hours reasonably spent on the case. *Hall,* 640 F.3d at 1353. The special master approved the hourly rate of petitioner's counsel in part because the area in which petitioner's counsel practices, Los Angeles, California, is relatively expensive. Dec. on Fees & Costs 5. Additionally, the special master noted that the

---

**4.** Additionally, petitioner's argument is undermined by the fact that, in his application for fees and costs, petitioner himself compared hours expended by his attorney to those expended by the *Doe/11* attorney. *See* Pet'r's Mot. for Review 12–15, 17.

hourly rate of petitioner's counsel was "support[ed], to some extent" by the particular attorney's skill and expertise. *Id.* This skill and expertise justified her rate and indicated that the amount of time she "spends on certain tasks will be less than the amount of time a less experienced attorney would spend on the same work." *Id.* at 6.

The special master discussed in detail the various activities petitioner's counsel listed on her hourly billing report. *See id.* at 9–21. He identified, based on his experience and within the bounds of his discretion, which hours were reasonably expended and which were not. *See id.* Once he determined the number of compensable hours, he multiplied that figure by a reasonable hourly rate and determined the amount of attorney's fees petitioner should receive. *See id.* at 19. Nothing suggests that the special master deviated from the lodestar method. That he considered awards in other similar cases is not inconsistent with reliance upon the lodestar method.

### G.  The Special Master Did Not Seek to Punish Petitioner for Taking an Appeal

 Throughout his motion for review, petitioner asserts that a number of the special master's determinations indicate that he was punishing petitioner for having pursued an appeal from the special master's decision denying his entitlement to compensation for his injury. Pet'r's Mot. for Review 15, 17. The special master noted in his decision that "[s]pecial masters are mindful that reducing fees for work performed on appellate litigation may be perceived as penalizing an attorney for appealing the same special master's decision. As a consequence, they approach such fees determinations cautiously." Dec. on Fees & Costs 7. Although petitioner may perceive the reduction in his fees and costs as punishment for pursuing an appeal, nothing in the special master's opinion suggests that this is so. The special master's opinion was detailed and carefully done. The special master reviewed petitioner's billing records, fees, and costs and appropriately employed his discretion and his experience to determine the degree to which time devoted to certain activities should be reduced. Moreover, he approved petitioner's counsel's relatively high billing rate, which contributed significantly to the award of $124,711.51 ($115,518.00 in fees and $9,193.51 in costs). *See id.* at 5. That award is in addition to the interim award of fees and costs in the amount of $134,371.01. Thus, the total award to petitioner comes to $259,082.52.

### CONCLUSION

In light of the foregoing, the Court finds that the special master did not act arbitrarily, capriciously, or contrary to law, and did not abuse his discretion when he determined petitioner's final award of fees and costs. Accordingly, the Court hereby **DENIES** petitioner's motion for review and **AFFIRMS** the special master's determination that petitioner is entitled to a further award of attorney's fees and costs in the amount of $124,711.51. The Clerk of the Court shall enter judgment accordingly.

**IT IS SO ORDERED.**